**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bridget Morton and Jamie Morton<br><br>Plaintiffs,<br><br>v.<br><br>ALS Services USA Corp.,<br><br>Defendant. | No.  CV 11-00946-PHX-DGC<br><br>**ORDER** |

Defendant ALS Services USA Corp. has filed a motion for summary judgment on Plaintiffs' Title VII claims. Doc. 57. The motion has been fully briefed. Docs. 65, 66. For the reasons set forth below, the Court will grant the motion.[1]

**I.   Background.**

Plaintiffs Bridget Morton and her son Jamie Morton began working as lab technicians for Stavely Services – a laboratory that analyzes oils, fuels, coolants, and other lubricants – in 2005 and 2006, respectively. Doc. 57 at 2. In approximately December 2008, Defendant ALS purchased Stavely Services. *Id.* At the time, Ward Baker was the Lab Supervisor, Jim Klippel was the Lab Manager, and Chris Mitchell, who had worked for Stavely Services since 2006, was the Quality Assurance Coordinator. *Id.*

---

[1] The parties' requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1 In March of 2010,[2] Jamie and Bridget began having conversations with Chris Mitchell about attending his church, The Church of Jesus Christ of Latter-day Saints, sometimes referred to as the Mormon church. Mitchell invited them to visit the church. Doc. 58, ¶¶ 5-7. Jamie and Bridget visited Mitchell's church along with other family members, but decided not to return. Docs. 58, ¶ 8; 64, ¶ 8. They testified at deposition that they felt "snubbed" by Mitchell's later suggestion that the church was not a good fit for them and his recommendation that they visit a Mormon congregation closer to their home. *Id.* Subsequently, Jamie had a discussion with Mitchell about a historical event concerning Mormons and Native Americans, during which Mitchell accused Jamie of slandering Mormons. Docs. 58, ¶ 20, 22; 64, ¶ 20. Afterwards, Mitchell told Bridget that Jamie had "slandered Mormons" and that "not all Mormons are bad." *Id.*

In September 2010, ALS decided to reduce its workforce. Doc. 58, ¶ 10. Mitchell, who was the Lab Manager at the time, was told to lay off one person, but he selected and was permitted to lay off two Lab Techs and one Data Entry Operator who he found had the lowest performance and caused the most problems with other personnel. *Id., see* Doc. 64-1 at 66, Dep. of Christopher Mitchell, at 54:18-56:24. Jamie was one of the two Lab Techs selected for layoff. He was terminated on September 15, 2010. *Id.*: Doc. 64, ¶ 29. Jamie claims that he was told he could get his job back when the economy improved. Doc. 64, ¶ 29.

In October 2010, Ward Baker left ALS and two other Lab Techs needed time off to deal with medical issues. Doc. 58, ¶ 29. ALS hired two employees, one of whom was Mormon, to fill in as Lab Techs while the regular workers were on leave. Doc. 58, ¶ 29.

On October 26, 2010, Jamie filed a charge of discrimination against ALS with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of race (Native American) and religion (non-Mormon) and retaliation. Doc. 58,

---

[2] In his deposition, Jamie Morton describes these conversations as taking place in 2009, but later corrects himself and states that they occurred in 2010. *See* Doc. 64-1 at 34, Dep. of Jamie Morton, at 385:6-23.

¶ 17; *see* Doc. 60-13 at 2.  On November 15, 2010, Bridget filed a charge of discrimination against ALS with the EEOC.  Doc. 58, ¶ 18; *see* Doc. 60-14 at 2. Bridget's claim alleged retaliation against her because of Jamie's charge to the EEOC. Doc. 60-14 at 2.  Specifically, Bridget alleged that Mitchell called her into his office after Jamie filed the charge and started harassing and intimidating her, causing her to fear that her job may be in jeopardy.  *Id.*

The EEOC ultimately dismissed both charges because it was "unable to conclude that the information obtained establishes a violation of the statutes," and issued right to sue letters.  Doc. 59-17 at 2-3.  Plaintiffs subsequently filed this complaint.  Doc. 1.

## II. Legal Standard.

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Summary judgment is also appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Plaintiffs' Claims.

The complaint alleges "discrimination based on religion and retaliation in the workplace" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.  Doc. 1, ¶ 1. Beyond this general statement, the complaint fails to delineate separate causes of action or to identify which Plaintiff is making which claim.

1  Defendants and the Court are left to guess which claims pertain to which Plaintiff and
2  which allegations in the complaint and Plaintiffs' lengthy depositions purportedly support
3  each claim.  Although the Court must view the evidence in the light most favorable to
4  Plaintiffs, the Court is not required to make Plaintiffs' summary judgment arguments for
5  them.  As this Circuit has made clear, "[t]he district court need not examine the entire file
6  for evidence establishing a genuine issue of fact, where the evidence is not set forth in the
7  opposing papers with adequate references so that it could conveniently be found."
8  *Carmen v. S.F. Unified Sch. Dist.,* 237 F.3d 1026, 1031 (9th Cir.2001); *see also Keenan*
9  *v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (the district court has no responsibility on
10 summary judgment to "scour the record in search of a genuine issue of triable fact").
11 Accordingly, the Court will limit its discussion to those claims that are readily
12 identifiable from Plaintiffs' response to the summary judgment motion.

### A.  Jamie Morton's Retaliation Claim.

Plaintiffs assert that ALS "discriminated against Jamie Morton based on religion," but the only specific allegations in the complaint concerning actions taken against Jamie are that Mitchell "retaliatorily accused [him] of falsifying data" and "subsequently terminated" him.  Doc. 1-1, ¶¶ 19-20.  Plaintiffs' response to ALS's summary judgment motion likewise offers arguments and case citations pertaining to retaliation.  Plaintiffs argue, for example, that there is a causal connection between Jamie's termination and the "protected activity" (Doc. 65 at 6), and cite Title VII retaliation cases in support of Jamie's claim (Doc. 65 at 6-7, citing retaliation cases of *Miller*, *Bell*, *Villiarimo*, *Passantino*, *Porter*, and *Coszalter*).  Plaintiffs' summary of their claims in the parties' Rule 26(f) report likewise asserts that Mitchell "retaliatorily accused Jamie of falsifying data" and "subsequently terminated" him.  Doc. 8 at 3.  The Court will therefore analyze Jamie's cause of action as a retaliation claim.[3]

---

[3] Even if Jamie were making a disparate treatment claim, the Court would grant summary judgment on the present record.  ALS asserts that any such claim fails because Jamie has not made a prima facie showing that "others not in [his] protected class" – in other words, Mormon lab technicians – "were treated more favorably."  *Washington v.*

- 4 -

Title VII "prohibits retaliation against an employee 'because he has opposed any practice made an unlawful employment practice'" by Title VII. *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1082 (9th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). A plaintiff makes a prima facie case of unlawful retaliation by producing evidence that he engaged in activity protected by Title VII, that the employer subjected him to a materially adverse action, and that there was a causal link between the protected activity and the adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 58 (2006); *Vasquez v. County of L.A.*, 349 F.3d 634, 642 (9th Cir. 2004); *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002); *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). An action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (quotations omitted); *see Ray*, 217 F.3d at 1243; *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004).

ALS argues that Jamie cannot maintain a Title VII claim for retaliation because he fails to establish two elements: protected activity and causation. Doc. 57 at 5-7. The Court agrees that Jamie presents no evidence that he engaged in protected activity prior to the alleged adverse employment actions.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Jamie presents no evidence that he opposed an unlawful employment practice or participated in charges or proceedings brought under Title VII prior to his discharge. Instead, Jamie's retaliation claims rest on the theory that Mitchell launched a campaign to punish him because he told Mitchell he

---

*Garrett*, 10 F.3d 1421, 1434 (9th Cir. 1993). Doc. 57 at 9. Plaintiffs argue that Tanner Klippel, a Mormon, was hired by ALS instead of Jamie being rehired after his termination as promised (Doc. 64, ¶ 29), but Plaintiffs do not dispute that Klippel was hired for only four weeks as a temporary employee to replace lab techs who were on leave, and therefore was not a permanent lab tech comparable to Jamie (*id.*, Doc, 58 ¶29).

was not interested in joining Mitchell's church and questioned Mitchell about a historical incident involving Mormons and Native Americans. Doc. 65 at 2, 4. Jamie does not contend – nor could he – that these statements to Mitchell were made in opposition to an unlawful employment practice or somehow constituted a proceeding under Title VII. Absent a showing that Jamie engaged in protected activity under Title VII, his retaliation claim fails as a matter of law.

### B.     Bridget Morton's Retaliation Claim.

ALS does not dispute that both Jamie's and Bridget's charges with the EEOC constitute protected activity for purposes of Bridget's retaliation claim. Doc. 66 at 8. ALS argues, however, that the actions about which Bridget complains are not adverse employment actions, are not supported by the record, or occurred before the EEOC charges were filed. Doc. 57 at 10-11. Bridget responds that ALS engaged in four adverse employment actions after she filed her EEOC charge: it assigned her to do exclusively menial tasks, it allowed other employees to harass and intimidate her in the workplace, Mitchell stopped training her, and Mitchell refused to speak to her or acknowledge her presence in the workplace. Doc. 65 at 10.

The only evidence Plaintiffs provide in support of Bridget's claim that ALS assigned her menial tasks is her deposition testimony that after Mitchell accused Jamie of slandering Mormons "it all went downhill for me after that, that whole – the whole thing. Anything that I wanted to do, I wasn't allowed to do." Doc. 65 at 10, citing Doc. 64, ¶ 42, quoting Doc. 64-1 at 46, Dep. of Bridget Morton, at 192:21-193:2. But as noted above, Jamie's statements to Mitchell that led to the "slandering Mormons" charge was not protected activity under Title VII and therefore cannot form the basis for a retaliation claim. Moreover, this vague statement from Bridget's deposition – that "it all went downhill for me" and that [a]nything I wanted to do, I wasn't allowed to do" – does not identify any specific adverse employment action and does not say that Bridget was assigned merely menial tasks. To defeat summary judgment, Bridget must present sufficient evidence of an adverse employment action for a jury to find in her favor.

*Anderson*, 477 U.S. at 249 ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"). The vague statement from her deposition does not provide such evidence.

In support of her claim that ALS allowed other employees to harass her, Bridget points solely to her deposition testimony that an ALS employee, Chris Willmon, physically intimidated her by "get[ting] into [her] physical space," and that she told Mitchell about the event. *See* Doc. 64-1 at 53, Dep. of Bridget Morton, at 396:5-397:6. Bridget testified that Mitchell said he would look into the situation, but it happened a second time. *Id.* Encouragement or tolerance of an employee's harassment of a coworker may constitute an adverse employment action by an employer, *Watson v. Las Vegas Valley Water Dist.*, 268 Fed. Appx. 624, 627 (9th Cir. 2008), but Plaintiffs' evidence is simply too vague to defeat summary judgment. Bridget provides no factual details about Willmon's alleged harassment. One is left to guess as to what is meant by Willmon "get[ting] into [her] physical space." Bridget testified that Mitchell said he would look into the alleged harassment and that it occurred a second time, but she provides no information as to whether Mitchell did look into it, whether any action was taken by Mitchell or ALS, or how long after her conversation with Mitchell the second event occurred.[4] Furthermore, Bridget does not say when Willmon's alleged harassment occurred during her employment at ALS, making it impossible to determine that it occurred after the EEOC charges were filed as required for a claim of retaliation. In short, Plaintiffs have failed to present evidence from which a jury could conclude that Mitchell allowed Willmon to harass Bridget after the EEOC charge was filed and in a way that would amount to an adverse employment action. *Anderson*, 477 U.S. at 249.

Bridget alleges that Mitchell stopped training her after she made her EEOC complaint. Docs. 65 at 10; 64, ¶ 48. But Bridget's deposition testimony provides no

---

[4] Bridget did testify that she complained to Mitchell about Willmon using the acronym WWJD, for "what would Jesus do," and that a person from human resources then came to look into and correct Willmon's conduct. Doc. 64-1 at 53-54, Dep. at 397-98.

- 7 -

facts about the training she received before or after she made her complaint from which to infer that Mitchell's actions or inactions constituted an adverse employment action. The testimony suggests that the training Bridget received from Mitchell before her complaint was neither consistent nor substantial. Bridged testified that her prior training was "[j]ust a little bit more at a time, not actual." *See* Doc. 64-1 at 59, Dep. of Bridget Morton, at 420: 5-8. She also stated that she did not object to the infrequent training ("[t]hat was okay with me") because she had other work to do. *Id.* at 420:10. Bridget claims that Mitchell stopped training her "after [she] filed her charges" and that when she asked when she would get more training, he said "whenever you can get to it." *Id.* at 420:17-22. This evidence would not support a finding that Mitchell changed his approach to Bridget's training in any substantial way or show that Bridget suffered materially adverse consequences as a result.

Finally, Bridget points to her deposition testimony that Mitchell refused to speak to her or acknowledge her presence in the workplace after she filed her complaint. Docs. 65 at 10; 64, ¶ 49. This evidence does not show that Bridget suffered a materially adverse employment action. The Supreme Court has stated that "normally petty slights, minor annoyances, and simple lack of good manners" do not fall within the scope of Title VII's antiretaliation provision. *White*, 548 U.S. at 68. Bridget was asked if Mitchell's unwillingness to interact with her undermined her ability to do her job, and she answered "I think so, yes." Doc. 64, ¶ 49. But Bridget gave no evidence of materially adverse consequences she suffered as a result of Mitchell's bad behavior. *See id.* Absent a showing of injury or harm, Brigdet's testimony fails to provide evidence of actionable conduct under Title VII. *See Smith*, 548 U.S. at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996) ("mere ostracism in the workplace is not enough").

In sum, Bridget has failed to present evidence of an adverse employment action that would support a claim for retaliation. The Court will grant summary judgment to

ALS on Bridget's Title VII claim.

**IV.     Plaintiffs' Motion to Strike.**

Plaintiffs filed a motion to strike Defendant's supplemental statement of facts and response to Plaintiffs' separate statement of facts. Doc. 68; *see* Doc. 67. Plaintiffs argue that Defendant's supplemental filings are not permitted under Rule 56 or the Court's local Rules and they should be stricken because Defendant did not seek leave from the Court to file supplemental papers. Doc. 68 at 1.

The Court will grant Plaintiffs' motion with respect to part one, ALS's supplemental statement of facts, because ALS introduces facts from the record not previously presented in its motion. *See* Doc. 67, ¶¶ 1-10. The Court will deny the motion with respect to part two, ALS's response to Plaintiffs' separate statement of facts, because ALS merely responds to facts presented by Plaintiffs' and does not cite to new facts. *See* Doc. 67, ¶¶ 34-49. Objections to the non-moving party's responsive statement of facts may be set forth in a separate reply statement of facts where they do not introduce new facts or evidence. *See* LRCiv 7.1(m)(2).

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 57) is **granted**.
2. Plaintiffs motion to strike (Doc. 68) is **granted in part** and **denied in part** as set forth in this order.
3. The Clerk is directed to terminate this action.

Dated this 20th day of August, 2012.

_____
David G. Campbell
United States District Judge